## FRANK V. KRIHA v. CHARLES G. KARTAK and Others.[1]

November 27, 1914.

Nos. 19,077—(92).

**Service of summons — finding — evidence.**

　　1. A finding of the trial court that there was no fraud in obtaining service of the summons in a divorce action *held* sustained by the evidence.

**Divorce — action to set aside decree — agreement of separation.**

　　2. Conceding without deciding that an agreement of separation between the parties, entered into after the desertion charged in the complaint, would be material evidence on that issue, the failure to disclose on the trial the existence of such agreement, though intentional, is not fraud or perjury for which the judgment can be set aside under the statute.

1 Reported in 149 N. W. 666.

Action in the district court for Ramsey county against the administrator of the estate of Elizabeth M. Kartak, deceased, and the heirs at law of the decedent, to set aside a decree of divorce, to declare plaintiff to be the lawful surviving spouse of decedent, and that he be allowed to share in her estate. The case was tried before Dickson, J., who made findings and ordered judgment in favor of defendants. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Willis & Cahill,* for appellant.

*Allen & Straight,* for respondents.

BUNN, J.

This is an action to set aside, as obtained by fraud, a judgment of divorce. The decision was in favor of defendant, and plaintiff appeals from an order denying a new trial.

The contention of plaintiff is that the finding of the trial court that there was no fraud in obtaining the judgment is not sustained by the evidence.

The evidentiary facts upon which this finding was made are as follows:

Plaintiff and Elizabeth M. Kartak were married in St. Paul December 30, 1909; in September, 1910, they went to Grand Forks, North Dakota, and began keeping house and living together in that city as husband and wife. Early in November of the same year plaintiff left his wife and went to a hotel in the city to live. Some three weeks later he returned to her, and they lived together until Christmas day, 1910, when plaintiff again left. The court finds that this was wilful desertion by plaintiff. January 27, 1911, plaintiff caused to be prepared by a lawyer in Grand Forks a written agreement of separation, which was on the next day signed by plaintiff and his wife. This agreement provided, in addition to the main features of separation, absolving each other from all claims by reason of the marriage relation, releasing the husband from all obligation to support his wife, and arranging property matters, that plaintiff would pay the railway fare of his wife from Grand Forks to St. Paul, and the expenses of removing her personal effects to

that city.   Plaintiff paid his wife $100 to cover these expenses, and she shortly thereafter moved to St. Paul, where she lived separate and apart from her husband until her death, never demanding and never receiving from him any support or maintenance.   Kriha remained in Grand Forks, being employed there in a candy factory. In October, 1912, Mrs. Kriha employed attorneys of St. Paul to bring an action for divorce against her husband on the ground of desertion; they prepared and signed a summons and complaint, and between October 1 and December 12 made efforts to locate Kriha and obtain personal service upon him.   He was supposed to be still in Grand Forks, and the papers were sent to the sheriff there for service; they were returned with the information that Kriha had left Grand Forks and was in Aberdeen.   The summons and complaint were then sent to Aberdeen for service, but were returned by the sheriff there with the information that Kriha had gone to Fargo.   Inquiry of the sheriff at Fargo elicited the information that Kriha was in Wahpeton.   The sheriff at Wahpeton reported that he was unable to find Kriha.   In fact Kriha's movements had been exactly as reported, except that he had left each place shortly before the papers were received there.   Kriha left Wahpeton for Winnipeg on November 2, but his wife or her attorneys did not ascertain this fact until later; they then tried to locate Kriha in Winnipeg, but he had disappeared.   These efforts to personally serve the summons and complaint proving fruitless, the attorneys prepared to serve the summons by publication.   It was necessary to prepare a new summons (complaint filed), and at the same time the old complaint was added to so as to ask leave for plaintiff in the action to resume her maiden name.   The complaint was filed December 12, 1912, and an application made to a judge of the district court for an order of publication.   This application was based upon an affidavit of plaintiff setting forth in detail the efforts of herself and her attorneys to locate Kriha and serve him personally.   The order was made and the summons published.   Defendant made no appearance, and the case was heard in May, 1913.   Mrs. Kriha and her witnesses testified to the desertion, but she did not disclose to the court the separation agreement.   The divorce was granted, and

the judgment entered on May 17, 1913. Mrs. Kriha, or Elizabeth Kartak, using her maiden name, died May 26, 1913. Immediately afterwards Kriha appears and retains counsel to "look after [his] interests." This action followed.

It is claimed that there was fraud in not making further efforts to serve Kriha personally, and in concealing from the court the existence of the separation agreement. The first claim relates to the matter of invoking the jurisdiction of the court, the other to the merits of the cause of action.

1. The importance of personal service in divorce actions is recognized by the statute, by this court, and uniformly, we think, by the trial courts. We do not doubt that where substituted service instead of personal is made through fraud of the plaintiff, with intent to keep the institution of the action a secret from defendant, a judgment procured by such fraud will be set aside in a suit brought for that purpose, even after the death of the plaintiff, unless there is some element of estoppel. But we see no fraud in this case. The learned counsel for plaintiff calls the divorce suit in question a "blot upon the judicial records of Ramsey county" "founded in fiction and perversity, maintained in fraud, and consummated by deceit." This is strong language, but we think it is wholly unwarranted by the facts. It is based upon the facts that Kriha returned from Winnipeg to Grand Forks November 17, 1912, and remained a resident of that city until March, 1913, and that Mrs. Kriha and her attorneys, after their unavailing efforts to find Kriha, did not, when the new summons was prepared, renew their efforts. We are unable to agree to the claim that what was done to locate Kriha before the summons was changed is "utterly immaterial." That those efforts show the utmost good faith and diligence in endeavoring to obtain personal service is very clear. Are plaintiff and her attorneys to be charged with fraud, with a studied attempt to conceal from the defendant the fact that the suit was brought, just because they did not cover again the same ground they had shortly before gone over, or start new inquiries? We think not. It is plain that they did not know that Kriha had returned to Grand Forks, or where he was. Their prior efforts justified them in the belief that further effort would be

futile. They might, it is true, have written again to Grand Forks,
or inquired of relatives and friends of defendant in St. Paul. But
their information was that Kriha had left Grand Forks permanently,
and had disappeared. They had no reason to suppose that further
inquiry would disclose any new information. The trial court has
found that there was no fraud in obtaining the order for publication
or in acquiring jurisdiction over Kriha. We hold that this finding
is amply supported by the evidence.

2. As to the claim of fraud in not disclosing to the court in the
trial of the divorce action the existence of the separation agreement,
in the first place it is questionable as a matter of law, whether this
agreement was a defense to the charge of desertion. The desertion
had occurred a month or more before. Whether the agreement
should be considered as merely an arrangement of the property
rights of the parties, not affecting the question of desertion, is per-
haps a doubtful question. It might depend upon the facts surround-
ing its execution. Weld v. Weld, 27 Minn. 330, 7 N. W. 267; 14
Cyc. 636; Ogilvie v. Ogilvie, 37 Ore. 171, 61 Pac. 627; Walker v.
Walker, 14 Cal. App. 487, 112 Pac. 479; Nichols v. Nichols, 11
S. W. 286, 10 Ky. Law Rep. 930. In this state of the law, we can
hardly impute fraud to the plaintiff or her attorneys in determining
that the agreement was not material. In addition it appears that
Mrs. Kriha was unable on account of illness to be in court when
the case was tried, her testimony being given by deposition taken at
the hospital. Her attorneys had seen the agreement some time be-
fore in another connection, but did not have possession of it or have
it in mind at the time of the trial.

But though it is conceded that the failure to disclose to the court
the agreement of separation was intentional, this is not fraud or
perjury which is ground for setting aside the decree. The complaint
advised the defendant that his wife charged and would attempt to
prove desertion. It is immaterial that he did not answer, or that
in fact he did not know of the suit. The concealment of the separa-
tion agreement, if it was material evidence, and intentional, was
at least no worse than would be the giving of false testimony as to

the fact of desertion.    This would not be ground for setting aside the decree.    When the issues are clearly defined in the pleadings and no fraud is practised which misleads a party as to the character of the proofs intended to be offered, or tends to induce the party to refrain from defending, fraud or perjury in establishing the issue pleaded is not ground for setting aside the judgment under R. S. 1905, § 4277 (G. S. 1913, § 7910).    There must be fraud in invoking the jurisdiction of the court, or in preventing the party from defending the action, or inducing him not to do so.    McElrath v. McElrath, 120 Minn. 380, 139 N. W. 708, 44 L.R.A.(N.S.) 505, and cases there cited.    National Council of Knights and Ladies of Security v. Ruder, 126 Minn. 154, 147 N. W. 959.

We find it unnecessary to discuss or decide whether plaintiff would be estopped to question the decree.    We hold that it is valid.

Order affirmed.