## CHARLES P. MURRAY AND OTHERS v. WILLIAM FENLON CALKINS AND OTHERS.[1]

May 20, 1932.

No. 28,859.

[1]Reported in 242 N. W. 706.

*George W. Peterson, Anson B. Jackson, Jr., William H. Lamson,* and *Rollo N. Chaffee,* for appellants.

*Baldwin, Baldwin, Holmes & Mayall,* for respondent City National Bank of Duluth.

*Crassweller & Crassweller,* for respondents Calkins, Dykeman, Cook, and Walrath.

HOLT, J.

Plaintiffs appeal from an order striking out as sham general denials in the replies to certain specific allegations in the separate answers of the respondent bank and of the other respondents, and also appeal from the judgment entered on the pleadings as so purged of sham denials.

In regard to the order, it is enough to say that appellants made no attempt whatever to show that the replies in so far as the general denials therein met certain specified allegations in the answers were not sham. And no argument to the contrary has been made in this court. The sole question remaining is whether the facts standing admitted in the pleadings justify the judgment rendered. The action is in equity, brought under G. S. 1923 (2 Mason, 1927) § 9405, to set aside a judgment of the district court of St. Louis county entered January 19, 1929, upon the ground that it was obtained by means of perjury and fraud of respondents. The pleadings are very lengthy, covering more than 50 pages of the printed record. A much condensed statement of the material facts upon which the decision is predicated must therefore suffice.

On June 28, 1925, at Mobile, Alabama, died intestate one Charles S. Murray, whose residence then was and since 1882 had been at Duluth, this state. He was single and left an estate of upwards of $300,000 in St. Louis county. Soon thereafter one Emma

Frances Walrath petitioned the probate court of St. Louis county for the appointment of the respondent bank as administrator, and at a hearing duly had September 4, 1925, said bank was so appointed and did administer the estate. The respondent Walrath claimed in the petition that she was a half sister of the deceased and that he was also the half brother of respondents William Fenlon Calkins, Edwin Dykeman, and Clara Dykeman Cook, and that these four were the sole heirs of the deceased. In January, 1927, the plaintiff Harry J. Murray made and delivered to the attorneys of the respondent bank an affidavit in which he claimed that he was the son of John N. Murray, and that his father was the brother of Charles S. Murray, deceased, whose estate was being probated; also stating that he had no living brother or sister. The respondent bank, in order to have determined who were the heirs, petitioned the probate court for a partial distribution of $4,000. Notice of a hearing thereon was duly given and published and also personally served on Harry J. Murray and his attorneys. The hearing was had on March 28, 1927, and Harry J. Murray appeared in person and by attorneys and took part. At that hearing Calkins, Walrath, Dykeman, and Cook again testified in person or by deposition that Charles S. Murray, deceased, was the illegitimate son of Louisa A. Pierce, born to her in Wyoming county, New York, in 1845, and was given the name of Almeron Pierce; that his mother and grandfather moved to Michigan; that Almeron Pierce enlisted under that name in 1862, deserted in 1863, returned to the home of his stepfather, Dykeman, who was then married to his mother, Louisa A. Pierce, when, a difficulty arising between him and his stepfather, he left home; and that he announced at the time he was home the change of name from Almeron Pierce to Charles S. Murray.

On April 9, 1927, the probate court entered its decree of partial distribution finding said Calkins, Walrath, Dykeman, and Cook to be the half brothers and half sisters of said Charles S. Murray, deceased, and to be his sole heirs, and directing that the $4,000 be distributed to them in equal shares. Notice of the filing of this decree was duly served upon the plaintiff Harry J. Murray and his

attorneys and proof of service filed in the probate court on April 15, 1927; and after the lapse of 30 days, when no proceeding to review the decree was pending and while the respondent bank still believed that Harry J. Murray's affidavit was true, viz. to the effect that he had no living brother or sister, it paid the $4,000, as directed and took and filed in the probate court proper receipts therefor.

On October 6, 1927, the plaintiffs Harry J. Murray and Mary M. Bellecourt appealed to the district court of St. Louis county from the decree of partial distribution rendered by the probate court April 9, 1927, and the plaintiff Charles P. Murray filed a complaint in intervention, these three persons claiming that they were the children of John N. Murray, a brother of Charles S. Murray, deceased. The appeal of Harry J. Murray was dismissed because not taken in time. On the appeal other attorneys were substituted for the attorneys who represented Harry J. Murray in the probate court, and the new attorneys moved and obtained a continuance over the January, 1928, term of court in order to prepare for trial. Before trial was reached in the summer of 1928, plaintiffs herein again changed attorneys, being represented at the trial by Nelson & Cedergren of Duluth and by Cadigan & Cadigan of Superior, Wisconsin. At the trial Walrath and Calkins testified by depositions and Dykeman and Cook in open court, as hereinbefore stated, as to their relationship to Charles S. Murray and to his being the son of their mother, Louisa A. Pierce, born in Wyoming county, New York, in 1845. Other persons, in person and by depositions, corroborated the respondents named at said trial. Plaintiffs then claimed, and in the complaint now allege, that the Almeron Pierce through whom respondents claim was a resident of Battle Creek, Michigan, and there died and was buried in 1917; but that this is unfounded was established by the documentary proof, admitted by stipulation at the trial, showing that the Almeron Pierce who died in 1917 was born in New Brunswick in 1833, and was not the Almeron Pierce who was born in New York in 1845, and who enlisted at the given age of 18 in 1862.

On December 18, 1928, the district court filed findings that respondents Calkins, Walrath, Dykeman, and Cook were half broth-

ers and half sisters of the deceased Charles S. Murray and his sole heirs, and directed judgment accordingly, which was entered January 19, 1929. Thereafter, while no proceeding was pending to review the judgment, the respondent bank paid the inheritance tax of $23,385.51, fixed by the proper tribunal. Pursuant to due notice a hearing was had in the probate court upon the respondent bank's petition for allowance of its final account and a final decree of distribution of the estate, and upon such hearing, on March 25, 1929, the probate court allowed the final account and entered its final decree distributing $245,757.41 in value of personal property and all real estate of deceased to said Walrath, Calkins, Dykeman, and Cook in equal shares. Thereafter these distributees demanded their shares of respondent bank; and, there being no proceeding pending to review said decree, the bank paid the persons named their shares on April 9, 1929, and took and filed in probate court the proper receipts therefor and has not since had any assets of any kind in its hands belonging to the estate of said deceased.

Only this in addition need be stated: All the plaintiffs knew since the fall of 1925 of the death of Charles S. Murray and the approximate value of his estate and that it was being administered. There is a general charge that the respondent bank conspired with the other respondents and aided and abetted them in procuring the judgment here attacked; but this charge of conspiracy and abetting falls, in view of the fact, now standing admitted, that at the opening of the trial in the district court upon the plaintiffs Charles P. Murray and Bellecourt stipulating to protect the bank for the $4,000 it had distributed to the other respondents, when there was no proceeding pending to review the probate court's decree, the respondent bank and its attorneys immediately withdrew from the trial and did not again appear in court until plaintiffs afterwards sought by motions to have the judgment set aside.

It appears that during the litigation Emma Frances Walrath died, and her estate was administered prior to the final decree in the estate of Charles S. Murray. The respondent Bertha M. Walrath was her daughter and sole heir and received the share her

mother would have received had she lived. No distinction between the two need be made in this decision.

From what is above stated it is clear that the respondent bank is entitled to judgment on the pleadings. The complaint does not allege a single act of wrongdoing in which the bank participated or in which it aided or abetted the other respondents. The general allegations of fraud and conspiracy are insufficient. It stands admitted that it did not seek the office of administrator. After being appointed and it appeared that there might be other heirs than disclosed by Emma Frances Walrath's petition and by the testimony adduced when the court appointed it administrator, the bank, before proceeding further, petitioned for the distribution of a small part of the estate so that the true heirs might be definitely determined by the probate court. This was obviously the right and prudent thing to do in justice to all concerned. And when plaintiffs would not abide by the decree of the probate court, the respondent bank ceased to take part in the trial of the appeal therefrom as soon as plaintiffs promised to protect the bank for the $4,000 distributed in case said plaintiffs won. It did not again come into court to oppose plaintiffs until the latter sought to set aside the judgment and decrees under which it had distributed all the assets of the estate. The admitted facts of its answer prove conclusively that the respondent bank in its official capacity as administrator of the estate of Charles S. Murray has done all that the law required, has fully accounted for its administratorship, and distributed all of the assets of the estate pursuant to valid decrees before this action was begun.

In our opinion the other respondents were also entitled to the judgment ordered. The general allegations of conspiracy and fraud are insufficient in so far as charging these respondents with being coconspirators with the respondent bank. No act of concerted action with the bank is alleged which could be construed as intended to mislead either the court or these plaintiffs in the litigation leading up to the judgment. The sum and substance of the complaint is that the perjury of the respondents, other than the bank, on the

single issue of their being the half brothers and half sisters of Charles S. Murray, brought about the judgment and decree assailed by this action. That being true, no cause of action appears from the pleadings.

In Hass v. Billings, 42 Minn. 63, 43 N. W. 797, a leading case in this state, it was held that an action cannot be maintained under said § 9405 of our statute upon "the bare allegation that on an issue of fact squarely made, so that each party knows what the other will attempt to prove, and where neither has a right, or is under any necessity, to depend on the other to prove the fact to be as he himself claims it, there was false or perjured testimony by the successful party or his witnesses." Upon this principle demurrers to complaints similarly charging perjury and subornation of perjury were sustained in this court in Wilkins v. Sherwood, 55 Minn. 154, 56 N. W. 591; Moudry v. Witzka, 89 Minn. 300, 94 N. W. 885; Hayward v. Larrabee, 106 Minn. 210, 118 N. W. 795, 130 A. S. R. 606; Marcus v. National Council, 134 Minn. 338, 159 N. W. 835; Penniston v. Miller, 156 Minn. 403, 194 N. W. 944; Hawley v. Knott, 173 Minn. 149, 216 N. W. 800. Considering the admitted facts above set out, there can be no doubt that plaintiffs as well as these respondents knew that the single issue for trial on the appeal from the probate decree of April 9, 1927, would be whether plaintiffs or the four respondents were the heirs of Charles S. Murray, deceased. Each side knew that no reliance could be placed upon the other for proof. Plaintiffs knew since the fall of 1925 that it was necessary for them to establish their claimed relationship to the deceased if they were to share in his estate. They not only knew that the four respondents claimed to be the sole heirs of the deceased from the petition for the appointment of the respondent bank as administrator, but that their evidence, taken in the probate court, disclosed in detail the time and place of birth of Charles S. Murray, that he was the illegitimate son of their mother, Louisa Pierce, his change of residence, his enlistment, desertion, and change of name. This testimony was transcribed and introduced in the trial in the district court on appeal. Throughout the entire litiga-

tion plaintiffs were represented in court by firms of attorneys of high standing and ability. The stake involved was sufficiently large to command the highest efforts of both the attorneys and their clients to win it. The complaint neither directly nor inferentially alleges that any respondent in any manner lulled plaintiffs into security or did anything which induced them to refrain from vigilantly maintaining their rights in the trial. There is no complaint that plaintiffs were surprised by unexpected evidence. They secured a continuance over a term of court and were given ample time for preparation for trial and argument, the court delaying a decision for weeks after the trial was concluded. Such being the facts disclosed and admitted by the pleadings, the following decisions, in addition to those already mentioned, justified the learned trial court in ordering judgment on the pleadings: Watkins v. Landon, 67 Minn. 136, 69 N. W. 711; O'Brien v. Larson, 71 Minn. 371, 74 N. W. 148; Bisseberg v. Ree, 99 Minn. 481, 109 N. W. 1115; Betcher v. Midland Nat. Bank, 167 Minn. 484, 209 N. W. 325. It must be conceded that the courts, both probate and district, had jurisdiction of the estate of Charles S. Murray and that no fraud or improper act of any respondent invoked such jurisdiction. So there simply remains the charge that in the trial which resulted in the judgment now sought to be set aside the four respondents who prevailed did so by giving perjured testimony. Under the authorities already noted and others referred to therein, no cause of action can be found in the pleadings.

Plaintiffs suggest that the pleadings as purged of sham denials present a case for equitable relief without invoking said § 9405. But the statute gives a remedy where none existed. In Stewart v. Duncan, 40 Minn. 410, 412, 42 N. W. 89, 90, it was said:

"This statute is in derogation of the well-established and salutary principle and policy of the common law, which forbids the retrial of issues once determined by a final judgment."

Unless plaintiffs bring themselves within § 9405 they have no remedy. Among other cases cited by respondents as sustaining their position may be mentioned McElrath v. McElrath, 120 Minn.

380, 139 N. W. 708, 44 L.R.A.(N.S.) 505; Kriha v. Kartak, 127 Minn. 406, 149 N. W. 666; Saari v. Puustinen, 161 Minn. 367, 201 N. W. 434.

Other propositions are urged by respondents in support of the judgment. It is said that other witnesses than respondents testified to the same facts as respondents testified to, hence the judgment rests on other testimony than that of the alleged perjured testimony of respondents, also that the respondent bank is protected since it distributed all the assets of the estate pursuant to valid decrees or judgments. The correctness of these and other contentions of respondents need not be determined, for on the grounds already stated the judgment appealed from must stand.

Plaintiffs have made certain alleged cousins of theirs parties defendant herein, alleging that they are heirs of Charles S. Murray; and they insist that their rights must be adjudicated. These alleged relatives were not parties to the litigation in the probate court nor in the appeal to the district court wherein the judgment attacked was rendered and do not come within the class authorized to bring an action under § 9405. Stewart v. Duncan, 40 Minn. 410, 42 N. W. 89. Furthermore, those alleged relatives of plaintiffs are not parties to this appeal, and it can be no concern of plaintiffs how this judgment may affect them.

The order and judgment are affirmed.