## JAMES MURRAY AND OTHERS v. WILLIAM FENLON CALKINS AND OTHERS.[1]

April 27, 1934.

No. 29,843.

[1]Reported in 254 N. W. 605.

See *Murray v. Calkins*, 186 Minn. 192, 242 N. W. 706.

*Theodore Hollister* and *Lathers & Hoag,* for appellants.

*Crassweller & Crassweller,* for respondents.

*STONE, Justice.*

Plaintiffs appeal from a judgment for defendants entered on the pleadings.

Charles S. Murray, a resident of St. Louis county, died intestate in 1925. His estate was probated in that county and the administrator appointed on the petition of Emma Frances Walrath, claiming to be a half sister of the deceased. In April, 1927, there was a decree of partial distribution which determined that Mrs. Walrath, William Fenlon Calkins, Edwin Walter Dykeman, and Clara Dykeman Cook were the heirs. On appeal to the district court that decree was affirmed. The final decree of distribution was made in March, 1929, and the estate assigned to the distributees who had been determined by the decree of partial distribution to be the heirs. The estate has a value of upwards of $300,000. The inheritance tax of more than $23,000 was paid before distribution. The defendants here are the distributees of the estate except that Emma Frances Walrath has also departed this life, and defendants Bertha and Orlando Walrath, respectively her daughter and husband, are joined in her stead.

462

The foregoing facts appear without contradiction from the pleadings. Plaintiffs claim to be the heirs of the deceased Charles S. Murray to the exclusion of all others. They want a judgment annulling the partial and final decrees of distribution of the Murray estate and declaring them to be the owners of the property distributed under the decrees. First and last, there have been three sets of claimants to the estate. Those of the first were successful and are the distributees under the decrees of the probate court. The second group unsuccessfully attacked those judgments in a direct action to have them vacated for the same alleged perjury and fraud charged here. That action was finally disposed of by the decision in Murray v. Calkins, 186 Minn. 192, 242 N. W. 706, where will be found a more complete history of the controversy over the Murray estate.

■ There is no merit in the argument that vacation of the decrees of distribution is not prerequisite to the success of plaintiffs' attempt to recover the property. The administration of the Murray estate by the probate court was a proceeding *in rem*. It is not and cannot be denied that from the beginning the court had jurisdiction of the *res*. In re Estate of Eklund, 174 Minn. 28, 218 N. W. 235. Hence its decrees of distribution are binding on everyone interested in the estate; while they stand, conclusive against all the world. Fridley v. Farmers & M. Sav. Bank, 136 Minn. 333, 162 N. W. 454, L. R. A. 1917E, 544; Brotton v. Donovan, 177 Minn. 34, 224 N. W. 270; Schmitz v. Martin, 149 Minn. 386, 183 N. W. 978. The present case is not one involving the power of the probate court itself to vacate or rescind its decrees. See Savela v. Erickson, 138 Minn. 93, 163 N. W. 1029, and State ex rel. Lindekugel v. Probate Court, 33 Minn. 94, 22 N. W. 10. It is the principal function of the probate court in administering the estates of persons deceased to determine who is entitled to share therein, the proportions in which they take, and to assign to each his share. That is done by the decree of distribution, the incidence of which, as a judgment *in rem*, is not upon or against persons but on and in respect to property and the title thereto. (Compare First Trust Co. v. Matheson, 187 Minn. 468, 246 N. W. 1, 87 A. L. R. 478.) The

judgment determines the descent or inheritance and, for the distributees, is the basis and conclusive evidence of title. Unless vacated, it is complete protection against all excluded claimants, and excludes all not thereby adjudicated to be distributees. It matters not that there may be distribution of the property of a person deceased without probate proceedings. Here there was the usual administration and distribution by a decree which is final.

The statement in Leighton v. Bruce, 132 Minn. 176, 179, 156 N. W. 285, 287, that "if the decree of distribution was obtained by fraud, it would not be conclusive or binding," is immediately followed by comment that "relief could be had in a court of equity." That means, obviously and necessarily, that a decree, although obtained by fraud, is binding until vacated by an action in equity or otherwise. The fraudulent judgment is voidable, not void, and, as long as it stands, effective according to its terms upon the rights adjudicated.

■ Plaintiffs charge in most general language a conspiracy by the distributees of the Murray estate wrongfully to obtain it. The only detail averred is that Calkins testified in the probate court that he was half brother to the deceased and, with Emma Frances Walrath, Edwin Walter Dykeman, and Clara Dykeman Cook, also half brother and sisters, the sole heirs. That "testimony" is charged to have been wilfully "false and fraudulent" and that as a result the decrees of distribution were made. In numerous cases, from Hass v. Billings, 42 Minn. 63, 43 N. W. 797, to Murray v. Calkins, 186 Minn. 192, 242 N. W. 706, we have held that under our statute, 2 Mason Minn. St. 1927, § 9405, hereinafter considered, such allegations do not present a case for relief against a judgment. It is equally clear that they do not present a case for relief in equity irrespective of the statute. Equity grants relief against judgments only in such cases as those:

"Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, [or by] a false offer of a compromise; or where the defendant never had knowledge of the

suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interests to the other side —these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new trial and a fair hearing." 6 Pomeroy, Equity Jurisprudence (3 ed.) § 649, quoting from U. S. v. Throckmorton, 98 U. S. 61, 25 L. ed. 93 (in accord is Street v. Town of Alden, 62 Minn. 160, 64 N. W. 157, 54 A. S. R. 632).

We know from the pleadings that there was here a very real contest and a fair, extended, and stubbornly contested "hearing" antecedent to the judgment. True, the contest was waged in the probate and district courts between the first two sets of claimants, but the issue of heirship was the thing long and hotly contested. In the district court these plaintiffs attempted to intervene and were denied the privilege because of the insufficiency of their showing of any real claim of heirship. The order denying the application for leave to intervene was appealable, because final. Richter v. Merchants Nat. Bank, 65 Minn. 237, 67 N. W. 995. Their application was a general appearance whereby plaintiffs submitted themselves to the jurisdiction of the court. Whether in the personal sense they thereby became parties so as to be bound *in personam* by the final judgment we do not decide. It is enough that plaintiffs do not charge that any fraud of the successful claimants kept them in ignorance of the commencement of the probate proceeding or of its progress or probable results. They were entitled to appear in the probate court at any time while the proceeding was pending therein and assert their claims. They do not aver that anybody's conspiracy or fraud deprived them of that right. Thus it appears that plaintiffs' argument that, statutes aside, they have made a case for equitable relief is without merit.

Judgments are not lightly to be set aside. Their whole function, aside from affording relief, is to put controversies at rest as against

all the parties. In proceedings *in rem* they determine finally such issues as status and title against all the world. If the argument for plaintiffs were valid and they could reopen the matter, they could but relitigate the issues of heirship already settled by judgment. If worsted upon the trial of that issue, simply because their testimony was successfully opposed by that for the original claimants, they might again attack the resulting judgment upon the ground of perjury, and so on *ad infinitum*. Hass v. Billings, 42 Minn. 63, 43 N. W. 797. Such an anomaly of adjective law would tend to prolong litigation, whereas the purpose of all procedure is to terminate it as speedily as possible by final judgment, settling issues once and for all.

■ Attempt is made to justify the action under 2 Mason Minn. St. 1927, § 9405, authorizing an action to set aside a judgment obtained by "perjury, subornation of perjury, or any fraudulent act, practice, or representation of the prevailing party" provided the action is brought within three years after discovery by the aggrieved party of the fraud. This action was not brought within three years after plaintiffs knew all about what was going on in the probate court of St. Louis county. They seek to escape an adverse holding on that ground by considering the statute merely as one of limitation, and so of no avail to defendants because not pleaded. That is an erroneous view. The period fixed by the statute is not strictly a limitation of remedy. It makes action within the time fixed a condition precedent to relief. The law is that when a statute creates a new liability or an action "unknown to the common law, and fixes the time within which that action may be commenced, it is not a statute of limitation," but rather one of creation. Hence commencement of the action within the time fixed "is an indispensable condition of the liability and of the action which it permits." Partee v. St. Louis & S. F. R. Co. (C. C. A.) 204 F. 970, 972, 51 L.R.A. (N.S.) 721; Bomar v. Hagler, 75 Tenn. 85; Wheatland v. City of Boston, 202 Mass. 258, 88 N. E. 769; Peters v. Hanger (C. C. A.) 134 F. 586; 1 Wood, Limitations (4 ed.) 1. Being condition of the right of action as distinguished from mere limitation of time upon the remedy, it was not necessary for defendants to plead the point in

order to insist that plaintiffs had not brought themselves within the statute.

Much argument has been devoted to this *dictum* from Murray v. Calkins, 186 Minn. 192, 200, 242 N. W. 706, 709:

"Plaintiffs have made certain alleged cousins of theirs parties defendant herein, alleging that they are heirs of Charles S. Murray; and they insist that their rights must be adjudicated. These alleged relatives were not parties to the litigation in the probate court nor in the appeal to the district court wherein the judgment attacked was rendered and do not come within the class authorized to bring an action under § 9405. Stewart v. Duncan, 40 Minn. 410, 42 N. W. 89. Furthermore, those alleged relatives of plaintiffs are not parties to this appeal, and it can be no concern of plaintiffs how this judgment may affect them."

The "alleged cousins," the "parties defendant" so referred to, are the plaintiffs in this case. They were not parties to the appeal to this court in Murray v. Calkins, 186 Minn. 192, 242 N. W. 706. But the statement that they "were not parties to the litigation in the probate court nor in the appeal to the district court" must be taken as subject to what has already been said about their attempt to intervene therein. Without the latter, they were not parties in the sense that a judgment could be entered binding them *in personam.* What was said in Stewart v. Duncan, 40 Minn. 410, 42 N. W. 89, cited in the above excerpt from Murray v. Calkins, 186 Minn. 192, 200, 242 N. W. 706, had reference only to parties to actions *in personam.* But, the probate proceeding being *in rem,* these plaintiffs were all along parties in the sense that, as to the *res,* and their claim of interest therein, they were bound by the judgment. There is much authority that under a statute such as 2 Mason Minn. St. 1927, § 9405, claimants situated as were these plaintiffs in respect to the probate proceeding, are "aggrieved" by a judgment adversely affecting their interest. See definitions of "aggrieved party" in Wd. & Phr. (1, 2, & 3 ser.) They were not, at least before their attempt to intervene, parties to the record. But, the proceeding being *in rem,* that did not prevent their being parties "aggrieved"

by decrees which had the effect of excluding them from all share in the estate.

Judgment affirmed.

*I. M. OLSEN, Justice* (concurring).

I concur on the ground, first, that plaintiffs failed to bring their action within the three-year limitation period fixed by the statute; second, on the ground that, if entitled to any relief, their remedy was by application to the probate court to have its final decree reopened, within one year after notice or knowledge thereof.

