# IN RE ESTATE OF WALTER BRITTON JORDAN, JR.
## DANIEL L. BELL, APPELLANT.[1]

January 22, 1937.

No. 31,037.

*Patrick J. Ryan,* for appellant.

*Orren E. Safford* and *Briggs, Weyl & Briggs,* for respondent-executors.

JULIUS J. OLSON, JUSTICE.

Appellant on December 29, 1924, conveyed certain premises in St. Paul to Samuel M. Fink and as a part of the purchase price

[1]Reported in 271 N. W. 104.

accepted the latter's promissory note for $50,000 secured by a purchase money mortgage upon the granted premises. The note by its terms was made payable at the rate of $2,000 per annum on December 31 in each of the years 1929 to 1933, inclusive, and the remaining $40,000 on December 31, 1934. The interest rate was six per cent per annum, payable semi-annually. On the same day the purchaser conveyed to his father, Morris Fink, the identical premises. In the deed of conveyance this clause was written:

. "Subject, however, to a mortgage for Fifty Thousand Dollars ($50,000) given by Samuel M. Fink, one of the parties of the first part, to Daniel L. Bell at the date hereof, to secure a part of the purchase price of said lots, *which the party of the second part herein neither assumes nor agrees to pay.*" (Italics supplied.)

Thereafter, April 28, 1925, pursuant to correspondence had between the parties, Morris Fink conveyed these premises to William A. Jordan and Walter Britton Jordan, Jr., of Minneapolis. The deed contained the following clause:

"Subject, however, to a certain mortgage for $50,000.00 made by Samuel M. Fink to Daniel L. Bell, dated December 29, 1924, and recorded in Book 647 of mortgages, at page 39, *which mortgage the purchasers hereby assume.*" (Italics supplied.)

The correspondence had prior to the making of the conveyance indicates no agreement to assume the mortgage debt. In the deal last mentioned, in addition to certain other considerations, the Jordans executed and delivered to Morris Fink a second mortgage upon the same premises for $10,000, $5,000 thereof being due one year and the remaining $5,000 two years from the date of the transaction. That mortgage was duly paid and later satisfied.

Walter Britton Jordan, Jr. died in March, 1927, survived by his widow and two young children. The widow and the brother William A. Jordan, respondents here, are the executors of his will, duly appointed, qualified, and acting. In August, 1927, and within the time limited by the court for filing claims, appellant, Bell, presented his claim against the estate of the deceased Jordan and therein stated under oath, among other things, as follows: .

"That on December 29, 1924, said Samuel M. Fink and wife sold and conveyed said premises to one Morris Fink and in and by the deed of conveyance, *said Morris Fink assumed and agreed to pay the note hereinbefore described.* (Italics supplied.)

"That on the 28th day of April, 1925, said Morris Fink and wife sold and conveyed said above described premises to William A. Jordan and Walter B. Jordan, Jr., decedent herein and in and by said deed of conveyance, said William A. Jordan and Walter B. Jordan, Jr., assumed the note hereinbefore described.

"Wherefore, this claim is now filed herein without waiving the mortgage security hereinbefore described."

The hearing upon this claim was deferred by the court pending investigation thereof by the executors and their counsel, the nature and extent whereof is not made clear by the record. No objection was made to its allowance, however, and on December 5, 1927, an order was made allowing it "in the sum of $50,000.00, with interest from the 30th day of June, 1927."

The record discloses that the subject matter of this claim has since been a source of extended discussion and correspondence between counsel for the parties. At any rate, there is no question but that appellant has received everything due by virtue of his claim except the $40,000 which remained to be paid December 31, 1934, and interest accruing thereon since December 31, 1933.

In May, 1934, William A. Jordan and the executors of the will of Walter Britton Jordan, Jr. commenced an action in the district court of Ramsey county against Samuel M. Fink and others to have the deed from Morris Fink to the Jordans reformed by striking therefrom the assumption clause. The allegations in that regard were that the property was to be taken subject to the Samuel Fink mortgage but without any agreement to assume or pay it. Appellant intervened in that suit. In his complaint in intervention he alleged that there was no assumption clause in the deed from Samuel M. Fink to Morris Fink. He therein disclosed that the clause specifically provided that the transfer from Samuel to Morris was subject to the Bell mortgage but that the vendee therein

"neither assumes nor agrees to pay" the same. That action was dismissed without prejudice shortly thereafter.

Then on November 13, 1934, the executors made their first motion in the probate court for an order vacating the order allowing appellant's claim. The proposed objections to the claim were that the Jordans had not agreed to assume or pay the indebtedness; that the assumption clause was inserted without authority on their part and without their knowledge or consent; that the assumption was without consideration, the result of mutual mistake, and that the scrivener in writing the instrument erred in inserting it. This motion was supported by two affidavits. The matter hung fire until April 27, 1935, when the probate judge by appropriate order denied the motion to vacate. That order remains in full force, nothing having been done, by appeal or otherwise, to limit or defeat its effectiveness. Not until October 29, 1935, did the executors proceed upon the present theory, namely, that the assumption clause in the deed from Morris Fink to the Jordans was not binding upon the latter because of lack of privity; that is to say, inasmuch as their grantor, Morris Fink, had received title to the property upon the express provision that he was not to be held to any personal liability by virtue of the Samuel M. Fink mortgage he could not unload upon the Jordans any liability not his.

As justification for the long delay, affidavits were submitted setting forth the falsity of the Bell proof of claim; lack of knowledge on the part of counsel for executors and the executors as to the true facts; their reliance upon the truthfulness and accuracy of appellant's statement of claim; that they did not learn of the true situation until sometime in October, 1935. There is, however, in the affidavit by one of counsel for the executors the admission that: "Nor did they or any one of them know prior to April 1st, 1934, that said deed to Morris Fink contained any other clause than that set out by Daniel L. Bell in said proof of claim."

The probate court on November 18, 1935, "ordered that the motion of said executors be and the same is hereby allowed, and the order made by this court in the above entitled matter on December 5, 1927, allowing the claim of Daniel L. Bell in the sum of Fifty Thousand

Dollars ($50,000) be and the same is hereby vacated and set aside."
Upon appeal to the district court that order was affirmed. The
present appeal is from the order last mentioned.

The probate judge was of opinion that sufficient showing had
been made to establish *prima facie* that appellant's claim was false,
"a fraud upon the executors and their attorney" and "a fraud
upon the court and justice." Further, that the "executors and the
attorney for said estate believed said false affidavit [proof of claim],
were misled by it and relying thereon did not object to" its allow-
ance. "We have here a fraud not only against the estate itself
and those administering it, its executors and attorneys who are
officers of this court, but the court itself has been deceived."

The district court in its memorandum said that the conclusion
reached by it "is not free from doubt." It therein summarized
many cases heretofore decided by this court. The conclusion reached
was that the order of the probate court should be affirmed, as it
appeared from the evidence that "the claim contained a misrepre-
sentation as to the assumption of the mortgage by the grantor of
the deceased, and based upon this misrepresentation presumably
the claim was allowed. The estate is still open and so far as appears
no prejudice will result to anybody by permitting the order to be
set aside and the claim heard upon its merits."

Appellant, by his first assignment of errors, raises what we con-
clude is the pivotal issue in the case: "The court erred in holding
that the probate court had power in 1935 to vacate an order allow-
ing a claim entered on December 5, 1927, *there being no showing of
fraud affecting the jurisdiction of the court or preventing a defense
of the claim.*" (Italics supplied.) If this assignment is well
founded it will not be necessary to give consideration to or dis-
cuss his other assignments.

In considering this question we shall assume that appellant was
guilty of intentional fraud when he made his proof of claim against
this estate, and that without such fraud having been practiced his
claim would have been disallowed.

■ There are certain principles of law as to which counsel are
not in disagreement. An order of the probate court allowing a

claim "shall have the effect of a judgment" against the estate is the declared purpose of 2 Mason Minn. St. 1927, § 8816. This being so, we need therefore not consider the difference between the power of courts generally in vacating orders and in vacating judgments. The difference is clearly pointed out in Barrett v. Smith, 183 Minn. 431, 237 N. W. 15. It is also the law that the power, authority, and jurisdiction of the probate court to vacate its orders, judgments, and decrees is as great as the power possessed and exercised by the district court in like or similar matters. Many of our cases so hold, one of the latest being that of In re Estate of Butler, 183 Minn. 591, 237 N. W. 592, where our prior cases are cited and reviewed. Similarly, the probate court, like the district court, is authorized by our constitution and the common law to correct at any time clerical errors, to clarify ambiguities, and make its judgments read as they were intended. In re Estate of Simon, 187 Minn. 399, 246 N. W. 31.

By § 9283 the court "at any time within one year after notice thereof, in its discretion, may relieve a party from any judgment, * * * taken against him through his mistake, inadvertence, surprise, or excusable neglect." This section further provides that the court "may, for good cause shown, modify or set aside its judgments, * * *, may supply any omission in any proceeding, or in the record, or by amendment conform any proceeding to the statute under which it was taken." Obviously this section does not apply to the facts in the instant case as it is clear that much more than the statutory period of time had run before the present proceedings were initiated. This leaves then § 9405, the only enactment to which respondents may look for authority to sustain the proceedings here brought into play. By that section, "any judgment obtained in a court of record by means of perjury, subornation of perjury, or any fraudulent act, practice, or representation of the prevailing party, may be set aside in an action brought for that purpose by the aggrieved party in the same judicial district within three years after the discovery by him of such perjury or fraud."

The remedy afforded by this section may be put into effect either by motion or by an original action. Geisberg v. O'Laughlin, 88 Minn. 431, 93 N. W. 310; Cornish v. Coates, 91 Minn. 108, 97 N. W. 579; Clark v. Marvin, 140 Minn. 285, 167 N. W. 1029; Mason v. MacNeil, 186 Minn. 278, 243 N. W. 129.

In a well considered case, recently decided, Murray v. Calkins, 186 Minn. 192, 199, 242 N. W. 706, 709, the court said:

"*So there simply remains the charge that in the trial which resulted in the judgment now sought to be set aside the four respondents who prevailed did so by giving perjured testimony.* Under the authorities already noted and others referred to therein, no cause of action can be found in the pleadings.

"Plaintiffs suggest that the pleadings as purged of sham denials present a case for equitable relief without invoking said § 9405. But the statute gives a remedy where none existed. In Stewart v. Duncan, 40 Minn. 410, 412, 42 N. W. 89, 90, it was said:

" 'This statute is in derogation of the well-established and salutary principle and policy of the common law, which forbids the retrial of issues once determined by a final judgment.'

"Unless plaintiffs bring themselves within § 9405 they have no remedy." (Italics supplied.)

The court in this case cited with approval, amongst many other cases, United States v. Throckmorton, 98 U. S. 61, 66, 25 L. ed. 93, 95, 96, where it was said:

"In all these cases, and many others which have been examined, relief has been granted, on the ground that, by some fraud practiced directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to the court.

"On the other hand, the doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed.  *  *  *  We think these decisions establish the doctrine on which we decide the present case; namely, *that the acts for which*

*a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered."* (Italics supplied.)

A review of our own cases from Hass v. Billings, 42 Minn. 63, 43 N. W. 797, to Murray v. Calkins, 186 Minn. 192, 242 N. W. 706, clearly shows that this court has consistently held that no judgment may be vacated for fraud under § 9405, or otherwise, after the lapse of one year from notice of entry, unless the fraud be such as to affect the jurisdiction of the court or prevent a party from appearing or presenting his defense. The following cases clearly establish the rule: Wilkins v. Sherwood, 55 Minn. 154, 56 N. W. 591; Watkins v. Landon, 67 Minn. 136, 69 N. W. 711; Moudry v. Witzka, 89 Minn. 300, 94 N. W. 885; Bisseberg v. Ree, 99 Minn. 481, 109 N. W. 1115; Hayward v. Larrabee, 106 Minn. 210, 118 N. W. 795, 130 A. S. R. 606; Major v. Leonard, 115 Minn. 439, 132 N. W. 915; McElrath v. McElrath, 120 Minn. 380, 139 N. W. 708, 44 L.R.A. (N.S.) 505; Young v. Lindquist, 126 Minn. 414, 148 N. W. 455; Kriha v. Kartak, 127 Minn. 406, 149 N. W. 666; Miller v. First Nat. Bank, 133 Minn. 463, 157 N. W. 1069; Marcus v. Knights and Ladies of Security, 134 Minn. 338, 159 N. W. 835; Penniston v. Miller, 156 Minn. 403, 194 N. W. 944; Saari v. Puustinen, 161 Minn. 367, 201 N. W. 434; Betcher v. Midland Nat. Bank. 167 Minn. 484, 209 N. W. 325.

■ Nor may the judgment allowing this claim be opened under the provisions of § 9236. It will be observed from cited cases thereunder that courts freely grant relief within the one-year period therein provided. After that time has elapsed, however, the general rule applicable to the other cases heretofore cited applies. In either case the fraud or perjury must be of an extrinsic nature; that is to say, it must go to the court's jurisdiction or be such as to prevent the losing party from appearing or otherwise presenting his defense. This is well illustrated in Watkins v. Landon, 67 Minn. 136, 140, 69 N. W. 711, 712, where the court said:

"The complaint in the present action does not advise us whether the plaintiff actually made a defense to the claim of assignment, or wholly failed so to do upon the trial. But, in principle, there can be no distinction made between a case in which a defense is actually made, but proves unsuccessful, and one in which there is a total failure to defend."

Prior cases relating to this subject are there cited. The following cases, amongst many others, have an important bearing upon this phase: Major v. Leonard, 115 Minn. 439, 132 N. W. 915; McElrath v. McElrath, 120 Minn. 380, 139 N. W. 708, 44 L.R.A.(N.S.)505; Miller v. First Nat. Bank, 133 Minn. 463, 157 N. W. 1069; McCue v. Weibeler, 135 Minn. 432, 161 N. W. 143; City of St. Paul v. Meister, 176 Minn. 59, 222 N. W. 520.

■ There can be no quarrel with respondents' claim that "fraud cuts down everything" even "to the extent of breaking through almost every rule." Rogers v. Hadley, 9 L. T. Rep. (N. S.) 292, 9 Jur. (N. S.) 898, 32 L. J. Rep. (N. S.) Exch. 241, 248. To the same effect is Levi v. Longini, 82 Minn. 324, 327, 84 N. W. 1017, 86 N. W. 333. That is the reason why by legislative enactment provision has been made for granting relief where fraud or perjury, or both, can be shown. But, as we have seen, the statute limits the time within which such matters may be taken advantage of. Obviously every fraud resulting in harm to another, and perjury also if successful in any litigation, results in an imposition also upon the court itself. Thereby the court, instead of becoming an instrumentality in the furtherance of justice, may unwittingly become, by reason of such misconduct on the part of the successful litigant, a means of or an instrumentality for injustice. But such result does not do away with the limitation of power granted by legislative authority. If power is lacking, as it is here, no matter how great or urgent may be the reason one might wish to exercise it, that obviously does not carry with it any grant of such authority. Even an emergency does not create power, but "may furnish the occasion for" its exercise. Home B. & L. Assn. v. Blaisdell, 290 U. S. 398, 426, 54 S. Ct. 231, 235, 78 L. ed. 413, 422, 88 A. L. R. 1481. Because authority is lacking,

we are not in position where we may grant any plea, having for its only foundation the appeal—

> "Wrest once the law to your authority;
> To do a great right, do a little wrong,
> And curb this cruel devil of his will."

■  The jurisdiction of the probate court was plenary both as to parties and subject matter. No fraud or perjury was employed by anyone in invoking its jurisdiction. Just as plainly nothing done by appellant prevented respondents from asserting any defense open to them. The claim was founded upon a definite statement claimed to be the fact. That statement was founded upon a written instrument, a matter of public record, easily available to anyone of inquiring mind or desiring to ascertain its truth or falsity. Respondents knew the moment the claim was filed, and they were informed of it, upon what proof and theory claimant founded his cause. If this proceeding had been conducted in a court of general jurisdiction and appellant had secured a judgment upon the same fact issue as was here presented, we think it clear no relief would now be open to the unsuccessful party. Just as plainly and for exactly the same reason, respondents are in no better position here.

The Jordans acquired this property in 1925. Abstracts were furnished. Competent counsel passed upon the title. The executors have had the advantage of competent legal service during all the years this matter has been pending. They chose to believe appellant's statement with respect to what he relied upon for recovery instead of making their own investigation. Over a period of seven years the order of the probate court remained in full force and effect. During these many years payments were being made to apply upon this particular claim. It was reduced as to principal to the extent of $10,000. Interest payable annually was met. Respondents were in possession and received the income from the premises. They still continue to do so. Under such circumstances any court would find it very difficult to discover any theory upon which respondents could lay claim to diligence. Rather, we think, it is quite clear that they have utterly failed to heed the require-

ment that equity aids the vigilant, not those who sleep upon their rights.

Order reversed.

Mr. Chief Justice Devaney took no part in the consideration or decision of this case.

Mr. Justice Peterson, not having been a member of the court when this case was argued and submitted, took no part in its consideration or decision.