## Karnes, et vir. v. Black, et al.

### (Decided October 17, 1919.)

### Appeal from Clark Circuit Court.

1. Judgment—Entry—Pleading.—No pleading is required for the entry of an order or judgment—this is done by a motion to enter or file.

2. Judgment—Agreed Order.—A consent judgment or agreed order, is a judgment and order, the provisions and terms of which are settled and agreed to by the parties affected, and is placed upon, and becomes of record by the consent and sanction of the court. It is not the judgment of the court except in the sense that the court allows it to be recorded, and, therefore, the court can not amend, modify or correct it, except by the consent of parties.

3. Judgment—Setting Aside Agreed Order.—In the absence of fraud or mutual mistake the court has no authority to set aside an agreed order of dismissal.

4. Judgment—Agreement of Parties—Disposition of Pending Action. —Any disposition of a pending action not illegal, may be fairly agreed to by the parties, and when so settled it becomes the duty of the court to permit such disposition, and when this is done the action is ended and the power of the court exhausted.

5. Judgment—Consent Order—Vacating.—An order made by consent can never be vacated without the consent of all the parties unless it affirmatively appears that its rendition was procured by fraud or mutual mistake.

6. Judgment—Order of Dismissal.—An instruction to counsel to not let an order of dismissal get out of his possession was not violated where the order was given to opposing counsel for himself and client to sign, where the order is returned to the person from whom received and was actually entered by the first named.

7. Judgment—Setting Aside Judgment.—Where the parties to an action cannot be restored to the same condition that existed when an agreed order was signed dismissing the case settled, the court will not set aside the order on the ground that one of the parties did not realize the effect of the order.

8. Judgment—Setting Aside Order of Dismissal.—Where the effect of an order dismissing settled was explained to appellant, before she affixed her signature, and in consideration of the order of dis-

missal the defendant waived its right to collect its costs from the appellant, in the absence of any such showing of fraud or mutual mistakes, appellant has failed to make out a case justifying the setting aside of such order.

J. A. EDGE and HOBSON & HOBSON for appellants.

J. F. WINN, J. M. BENTON and J. M. STEVENSON for appellees G. E. and Mollie Black.

BURNAM & BURNAM for appellee Betty Irvine, and guardian of Willie and Marcus Irvine

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

Appellants, Anna Karnes and her husband, instituted this suit to recover a one-half interest in the estate of Harry Crawford, deceased, estimated in value from $150,000.00 to $200,000.00. The allegation that Mrs. Karnes (hereinafter referred to as appellant), was the child and heir of decedent was denied by appellee, Mrs. Mollie Black, a daughter by a marriage which took place in 1875. Upon this one issue raised by the pleadings, the lineage of Anna Karnes, ninety-nine depositions were taken by appellees, forty-four by appellants. During the proof-taking and when appellants had concluded the deposition of one George Fletcher at Jackson, Ky., their chief counsel announced he was through and would withdraw from the case.

A proposition to dismiss the case at appellees' cost was declined, as likewise a suggestion that each side pay its own costs. The parties returned to Winchester the next day, the proposition was renewed and again declined; later a conference was held between the parties and counsel and as a result thereof, an agreed order was prepared dismissing the case settled, each side to pay their own costs. This was signed by Mrs. Karnes and her chief counsel, and left with the latter's nephew, with instructions that if appellees signed it, to have it entered, if not, then the nephew was to enter an order dismissing the case without prejudice. The following day the agreed order was signed by appellees and their attorneys, also by associate counsel for appellant, and then delivered by the parties to the circuit clerk.

On the first day of the next term of court, the agreed order was produced by the clerk and entered. No ob-

jection or exception to the entry of the order of dismissal appears in the record, but Mrs. Karnes, who had not as yet secured other counsel, was in court at the time and moved the court to set aside the order, filing her affidavit in support of the motion. This motion was overruled and exception taken. In an amended motion, supported by affidavit, appellant asked that the aforesaid order be set aside and leave given to dismiss without prejudice. An oral hearing was had, the record introduced in evidence, and the court having overruled the motions, an appeal was granted but not perfected. A former appeal granted by the clerk of this court was dismissed, the case being here on a second appeal granted by the clerk. Having been advised by letter as to the effect of the order and that it would be entered the first day of court, appellant wrote her chief counsel's nephew and telegraphed the circuit judge, and clerk, that she wanted the case dismissed without prejudice, this before court convened.

The record presents some very interesting features, but since the only question before us is as to the propriety of the order dismissing the case settled we will consider that one alone.

Appellant admits she signed the order, but says she did not realize the effect of it; she understood all along that if the case was dismissed she could file another suit. That when her chief counsel informed her he intended to quit the case it made her feel bad and nervous; she was worried and did not know what to do—she wanted to dismiss without prejudice—her counsel did not explain to her the difference between an order dismissing without prejudice and dismissing the case settled. She thinks, however, her counsel's nephew, in whose office the order was signed, explained to her the nature of the two orders at the time they were written.

Associate counsel for appellant says he had a talk with his client at his office about noon of the day the order was written, and again that evening at the hotel; this was after he had been informed of the dismissal of the case. He says he could not recount the whole conversation but they discussed the advisability and inadvisability of it; he does not recall that she mentioned the dismissal of the case, but his recollection is she said something about her intention to bring a new suit later on;

he had not then signed the order, but did sign it two or three days later "as a matter of regularity."

Several attorneys represented appellant, but the two who had most to do with her proof-taking we have referred to as chief counsel and associate counsel, the former having taken perhaps the leading part in her behalf. He did not testify on the hearing of the motions.

Witnesses for appellees testify to the various efforts to settle the case, and the facts leading up to the signing of the order of dismissal. On the train from Jackson to Winchester, appellant was in conference with her chief counsel; he also conversed with appellees' counsel, talking to first one and then the other. One of the appellees heard appellant make the statement, before leaving Jackson, that she had quit the case. On the morning the parties left for Winchester, the sheriff of Breathitt county says he offered to deliver to appellant and her chief counsel a notice to take depositions in the case, which had been placed in his hands. Both declined to receive it, the appellant stating at the time, "I have quit the case." She denies making such statement.

Speaking of the negotiations of settlement, appellees' counsel says he refused to submit any offer to his clients, unless it was signed by appellant; she was present when he told her chief counsel that his clients had declined the proposition of settlement but if they would draw the order and sign it he would submit it to his clients, and if they refused to sign the suit could be dismissed without prejudice. Appellant's counsel then told his client this was the best thing for her to do, that she had no chance in the case, and she would save that much by signing the order dismissing it settled.

The order was then drawn, her chief counsel signed it and told appellant to do so; she hesitated, "sat there and gazed at it intently for some little bit, then took up the pen and signed it." The nephew of appellant's counsel at the time explained to appellant the nature and effect of the orders dismissing without prejudice and dismissing the case settled, and that if the latter order was entered it would end the case, and she could not bring it again.

No pleading is required for the entry of an order or a judgment; this is done by a motion to enter or file, but appellant insists that the order dismissing settled could not

be entered without a pleading setting it forth. Commonwealth, for Use, &c. v. Pope's Admr., 21 R. 1842, 56 S. W. 503, is cited by appellant in support of this contention. The paper there involved was not an order of dismissal but the expression of a desire that the suit of Farley v. Pope's Admr., &c., be dismissed. It was not an order, and furthermore it was signed by an infant and was not tendered in the suit in which it was captioned, and for aught that appears the infant had attained his majority when an objection was made to the entry of the paper at a later term of court. An examination of the record in that case discloses the grossest fraud in the obtention of this paper from the illiterate ward.

Fraud, when properly alleged and proved, will authorize the court to set aside a consent order.

The right to set aside an agreed or consent judgment procured by fraud, is recognized by this court in Commonwealth v. Helm, 163 Ky. 69, 173 S. W. 389.

An order made by consent can never be vacated without the consent of all the parties unless it affirmatively appears that its rendition was procured by fraud or mutual mistake, the two essential prerequisites to the exercise of the power to annul or vacate such an order. 29 Cyc. 1519; Deaver v. Jones, 114 N. C. 649; 19 S. E. 637.

There must be a finality to court proceedings. Where litigants reach an agreement to settle their difficulties, and dismiss a suit some binding effect must be given to the order of dismissal signed as is the order in question by all parties in interest and their attorneys.

A court has power to vacate and set aside a consent judgment on the ground of fraud, or mutual mistake, but it cannot alter or correct it. And where, in compromise of a claim, judgment has been rendered against the defendant with his consent, he cannot, in the absence of proof of fraud, have it vacated on the ground that he acted on the erroneous advice of counsel. So, a judgment regularly entered pursuant to an agreement of the attorneys, filed in the case, cannot be opened after final judgment of the term, on the ground that the agreement was not authorized. Black on Judgments, sec. 319.

Where a decree is made by the consent of the parties the court does not inquire into the merits or equities of the case. The only questions to be determined by it are

whether the parties are capable of binding themselves by consent and have actually done so. If these two facts appear, the court orders a decree to be entered, and when thus entered, showing on its face that it is by consent, it is conclusive upon the consenting parties. Stites v. McGee, 37 Ore. 574, 61 Pac. 1129.

A judgment by consent of parties is a judgment, the provisions and terms of which are settled and agreed to by the parties to the action to be affected by it, and it is placed upon, and becomes of record, by the consent and sanction of the court. The court does not settle the grounds or the terms of it; it is not the judgment of the court, except in the sense that the court allows it to go upon the record and have the force and effect of a judgment; and, therefore, the court cannot amend, modify or correct it, except by the consent of all the parties to it. It is essentially, in its provisions, the agreement of the parties, and if the court should change it in any respect without consent, it would cease at once to be the judgment agreed upon by the parties; and such exercise of judicial power would be a practical denial of the right of the party prejudiced, or supposing himself prejudiced, to be heard according to law. McEachern v. Karchner, 90 N. C. 177. See also Morris v. Peyton, 29 W. Va. 201; 11 S. E. 954.

There is no claim of fraud here nor of mutual mistake and the relinquishment of appellees' costs was a sufficient consideration to support the agreement. Appellant does not deny signing the paper, but claims she did not understand the effect of the order. To change or modify this order or treat it as a nullity, would be in effect the making of an agreement or of an order of dismissal by the court, not in accordance with the understanding of both parties, but according to the interpretation or wish of but one of them.

Berry v. Somerset Railway Co., 89 Me. 552, 36 Atl. 904, involves facts quite similar to those found in this record. Not being ready for trial defendant offered to have the case entered "neither party, no further suit for the same cause." After consulting with his attorney, who explained to him the effect of a new suit and the proposed entry, plaintiff consented to the entry of the order suggested by defendant, which was done. A few days after the entry and during the same term of court plain-

tiff changed his mind and desired a non-suit. A motion to this effect was made and sustained, the entry was stricken from the docket and plaintiff allowed to become non-suit. In reversing this ruling the court says:

"The original entry was made by agreement of parties. There is no suggestion of fraud or mistake, or that counsel exceeded his authority. If the agreement had been reduced to writing and signed by the parties, it would have bound them. Defendant's relinquishment of costs was a sufficient consideration for plaintiff's agreement. Instead of putting the agreement in writing, the parties evidenced it by the entry upon the docket by permission of the court. It was not an entry ordered by the court, nor was it the result of any adjudication by the court. In fact, it was an entry the court had no power to order, except by agreement of parties. It was simply the executed agreement of parties, entered upon the docket under their authority, and was in no sense an order of court. In the absence of fraud or mistake, the court had no more authority to change that entry, than it would have had to annul the agreement if it had been reduced to writing and signed by the parties. Any disposition of a pending action, not illegal, may be fairly agreed to by the parties, and when so agreed, it becomes the duty of the court to permit such disposition; and when that is done, the action is ended, and the power of the court exhausted.

"In all cases where an entry is made by the court, acting judicially, and upon its responsibility, the court has power to change the entry, if justice requires. This case does not fall within that rule. If parties agree to a judgment for a certain sum, or to waive a trial by jury, or that damages may be assessed by a person named, and no fraud or mistake exists, it would be the duty of the court to allow the entry to be made in accordance with the agreement; and in so doing the court acts permissively and not judicially; and the agreement of parties thus carried out by the proper entry upon the docket, is a disposition of the suit by the parties, and not by the court, and is not subject to change by order of court. A consent decree in equity can only be set aside by consent. Bristol v. Water Works, R. I. (35 Atl. Rep. 884.)"

The point is made that certain instructions were not followed by the attorney to whom the order was given.

He was told not to let the two orders (one dismissing without prejudice, the other dismissing settled), to get out of his possession. He was also told by appellant's chief counsel, in the same conversation, "if they sign this order that we have signed, let that be entered, dismissing the case settled, each party paying their own costs, and if they don't sign that, I want you for me to take that order over and ask the court to enter it." That the order was given to appellees' counsel to secure the signatures of their clients, did not violate those instructions. The order if signed by appellees was to be entered; it was later returned to its first custodian and by him delivered to the clerk. The finality of the order could in no wise be affected; it was a consent order binding upon all parties when signed by them, and it matters not in whose hands it was placed. The intention of the parties was to have the order signed and entered—this was done.

It is claimed that appellant should be relieved from the order because she acted upon the advice of counsel when his interests were adverse to hers. He was on her first bond for costs. The character and integrity of appellant's chief counsel, a former attorney general of this state, is not attacked; counsel in their brief admit "he is just and conscientious, always unwilling to do his clients a wrong to shield himself."

Appellant was not compelled to sign the order. That she was coerced or over-persuaded to sign it might have some bearing on a suit against her counsel for neglect of his duties or unfaithfulness, if there was any such, nor is there any suggestion that appellees or their counsel colluded in any way with her attorneys.

Counsel for appellant relies upon the cases of Truett v. Onderdonk, 120 Cal. 581, and Wells v. Kincade, et al., 95 Kan. 466, 148 Pac. 607, Ann. Cas. 1916B, 667. In the first of these cases it was held the court had not lost its jurisdiction to give relief from the effect of a stipulation for the dismissal of an action, on account of alleged fraud; in the second case, where "October" had inadvertently been written in a stipulation instead of "September," the court corrected the mistake. Ency. Pl. Prac. vol. 20, p. 663, is also cited, the text reading:

"It has been held that though there be no fraud or mistake, the court has a wide discretion to relieve a party from a stipulation inadvertently, unadvisedly, or impro-

vidently entered into which will work to his prejudice, if both parties can be restored to the same condition as when the agreement was made. But the party seeking relief must show equitable grounds therefor, and in some cases it has been declared that a stipulation having the force of a contract will not be set aside except on the grounds that would call for annulment of any other contract."

While on page 664 the text reads:

"Where stipulation has been obtained by fraud, undue influence or collusion between the attorneys, it is conceded to be good ground for relief from the stipulation."

The latter is a fair statement of the rule. Even if the rule went to the extent of the text found on page 663, a question not here decided, the facts of this case would not authorize a reversal.

The appellees in the present case can not be restored to the status that existed at the time the agreed order was signed; they had not then concluded the taking of their depositions and it may now be impossible to secure the witnesses they could have obtained at that time, and they could have had an early trial of their cause. They have been put to an expense of several thousand dollars for depositions, and attorneys' fees, and since appellant has announced her intention of bringing a new suit in the federal court, if she succeeds on this appeal, all this expenditure of time and money will go for naught, and this vast amount of work would have to be gone over again.

Upon the showing made we find no ground justifying a reversal. The case is truly a hard one, but appellant signed the order, her proposition was accepted, appellees waived their costs, no fraud is claimed, nor is there any evidence of mutual mistake.

The judgment is affirmed.