ELEANOR HARRIET HAFNER v. MICHAEL
CHARLES HAFNER.[1]

August 15, 1952.

No. 35,659.

[1]Reported in 54 N. W. (2d) 854.

*Joseph P. Johnson,* for appellant.
*Robins, Davis & Lyons,* for respondent.

LORING, CHIEF JUSTICE.

This is an appeal from a judgment of the lower court modifying a prior divorce decree. The original decree, filed January 6, 1947, pursuant to a stipulation between the parties, provided that the husband (defendant) must convey to the wife—

"that certain duplex located at 639-641 North Dale Street, in the City of Saint Paul, described as follows, to-wit:

"The north fifty (N50) feet of Lots Twenty-nine (29) and Thirty (30), * * *."

and that the wife must convey to the husband all her interest in—

"that certain filling station property at 631 North Dale Street, in the City of Saint Paul, described as follows, to-wit:

"Lots Twenty-nine (29) and Thirty (30) (except the north fifty (N50) feet thereof) * * *."

Also, pursuant to stipulation, the decree provided that the wife should pay to the husband $4,000 in cash and that she should get the household furniture, et cetera. The parties have a son, whose custody was given to the wife.

During the spring of 1947, following the divorce decree, surveyors came onto the property above described and made a survey. They put stakes on a part of the property which the wife considered hers according to the decree. The surveyors refused to tell the wife why they were there and who had sent them. She called her attorney, but, because she was unable to tell him who the men were, he gave her no advice. (It later developed that they were sent by the husband.) During the same summer, the wife overheard the filling station operator talking about using some of the land now in dispute. She talked to her son about it, and they concluded that the operator was not serious about it. Nevertheless, she told the operator that if he caused her any trouble she would sue him. Later that summer, the wife saw the husband picking flowers on the land she considered hers, and she said that when she threatened to call the police he left. The wife thereafter conferred with her attorney, who wrote the husband a letter. She was not annoyed again until May 1950.

At that time, the wife discovered that part of a fence on the property had been removed and that the filling station operator was enlarging his driveway and encroaching on that part of the tract which she considered her property. She then had the property surveyed and afterward moved the court to amend the divorce decree so that it should read the north 60 feet instead of the north 50 feet of lots 29 and 30. The motion was based on the ground of mistake in fact. Her accompanying affidavit states:

"* * * At the time we made the settlement, it was clearly understood by all the parties, that Mr. Hafner was to receive only the filling station property, and the description as given to me of the duplex property was based upon the assurance that the legal description conformed to the use and occupancy of those premises by the defendant, myself and our son."

In her affidavit, the wife requested that if the decree not be modified the whole case be reopened.

She said that she understood that the description of the property she was getting would take it up to the fence, but the survey showed

that the 50-foot line is more than ten feet short of the fence. The two lots, 29 and 30, are on the northwest corner of Lafond avenue and Dale street. They were originally laid out on Lafond avenue, but the buildings were placed so as to face Dale street. For this reason, the back yard of the duplex is only approximately ten feet wide. The distance from the duplex to the 50-foot line is only about 17 feet. There is a fence west of the duplex which extends south, then turns in a generally easterly direction out to the street, separating the filling station from the rest of the property. As stated above, the fence did not run along the 50-foot line where the fence separates the filling station from the duplex. Rather, it runs along a line somewhere between 60 and 65 feet south of the north border of the property. Within the general area north of the fence, trees were planted and a clothes pole was placed.

Before the parties were married, the husband and his father were joint owners of both lots. After the marriage, conveyances were made whereby the north 50 feet was owned jointly by the husband and the wife, and the rest was owned jointly by the husband and his father. A duplex was erected within the north 50 feet, and a filling station was erected on the corner. The wife had seen the conveyance to her, in which the duplex property was described as the north 50 feet. She had seen a tax statement with the same description. However, the wife testified that she thought the 50-yard description included the property up to the fence, and all of the yard up to the fence was used by the occupants of the duplex. The husband agreed that the yard was used by the occupants of the duplex and admitted that anyone looking at the property would reasonably assume that it extended to the fence.

At the time of the divorce proceedings the wife and the husband were not speaking. The wife admits that she mistrusted the husband, but she says that she would not have entered into the stipulation if she had known that the legal description did not cover the property up to the fence. The parties and their attorneys held a conference prior to the execution of the stipulation, but the husband at no time told anyone that the 50-foot line did not go up to

the fence. The husband now says that he knew all the time that the 50-foot line did not go up to the fence.

When the wife filed her motion to amend the decree, the husband, by his attorney, made a "special appearance" to object to the jurisdiction of the court to hear the matter on any grounds at all. Before any testimony was taken, the wife moved to amend her notice, stating—

"we will also proceed on the further ground that there was mutual mistake of fact and overreaching by defendant, and that in addition thereto, if defendant claims there was no mistake on his part, that he practiced a fraud upon plaintiff in entering into the terms of the stipulation."

The trial court allowed the amendment over objections by the husband. The court held that it had jurisdiction to modify the decree and found that the former decree failed to express the intent of the parties and the court, which intent was that the wife be given the north 60 feet, that is, the property then being used for the duplex. In the judgment appealed from, the court amended the decree so as to give the wife the north 60 feet and awarded her attorneys' fees.

■ While the various jurisdictions are in conflict on the question, in Minnesota a *motion* is proper procedure to institute proceedings to amend a former decree in cases such as the instant one.[2]

■ The question of fraud and overreaching was introduced into the case by the factual allegations of the husband's answer to the motion; therefore, he was not prejudiced by any lack of notice. Because of this and, since it is a general rule in this state that pleadings may be amended liberally, it was not error to allow the amendment of the notice of motion to include fraud and overreaching.

---

[2]See, *e. g.*, Fitzgerald v. Maher, 129 Minn. 414, 152 N. W. 772; Rodgers v. United States & Dominion L. Ins. Co. 127 Minn. 435, 149 N. W. 671; cf. Elsen v. State Farmers Mut. Ins. Co. 219 Minn. 315, 17 N. W. (2d) 652 (petition).

■ This court, seemingly, has never decided the question whether a divorce decree which divides property pursuant to a stipulation is a consent decree as to the property division. Where the decree is different from the stipulation as to property, it may be the decree which is controlling.[3] Similarly, if jurisdiction has been retained, the decree may be modified as to the property division in spite of the stipulation.[4] Nevertheless, this court has recognized that a divorce decree pursuant to a stipulation as to property rights is more than just a decree. Hagen v. Hagen, 212 Minn. 488, 4 N. W. (2d) 100.[5]

In Warren v. Warren, 116 Minn. 458, 133 N. W. 1009 (cited in footnote 4, *supra*), we took cognizance that a judgment for alimony, as a matter of fact, may be based on a stipulation. It is only realistic to recognize that such decrees are in the nature of consent judgments as to that part entered pursuant to stipulation.[6]

It is within the inherent power of the court to set aside consent decrees, like judgments by confession, for fraud, mistake, or absence of real consent. Elsen v. State Farmers Mut. Ins. Co. 219 Minn. 315, 17 N. W. (2d) 652.[7] While a consent decree acquires the status of a judgment through the approval of the judge and being recorded

[3]See the majority and dissenting opinions in Holmberg v. Holmberg, 235 Minn. 424, 51 N. W. (2d) 598.

[4]*E. g.*, Warren v. Warren, 116 Minn. 458, 133 N. W. 1009; Randall v. Randall, 181 Minn. 18, 231 N. W. 413; see, Annotations, 58 A. L. R. 639, 109 A. L. R. 1068, 166 A. L. R. 675.

[5]Such a decree partakes of both a judgment and a contract, and it is something more than either. See, Keach v. Keach, 217 Ky. 723, 290 S. W. 708. Note may be taken that M. S. A. 519.06 provides that husband and wife may not contract with each other as to real property. Nevertheless, stipulations between husband and wife for purposes of a property settlement in a divorce proceeding are recognized.

[6]For holdings that such are consent decrees, see, *e. g.*, Dean v. Dean, 136 Or. 694, 300 P. 1027, 86 A. L. R. 79; Brady v. Hyman (Tex. Civ. App.) 230 S. W. (2d) 342; Barnes v. American Fertilizer Co. 144 Va. 692, 130 S. E. 902.

[7]Keach v. Keach, 217 Ky. 723, 290 S. W. 708; Karnes v. Black, 185 Ky. 410, 215 S. W. 191; Barnes v. American Fertilizer Co. 144 Va. 692, 130 S. E. 902; see, Annotation, 139 A. L. R. 421.

by the court,[8] and while the court may look to see that the settlement is fair, the court does not, in a consent decree, judicially determine the rights of the parties.[9] Rather, the decree rests on the consent of the parties; and, in the absence of a retention of jurisdiction (as discussed above), the decree should not be modified without their actual consent, on the basis of implied consent.[10] So, after vacation of the decree, the court should judicially determine the controversy.[11] In such case, the original proceedings must be reinstated and the controversy judicially determined.[12]

However, while a property division in a divorce decree pursuant to stipulation is in the nature of a consent decree, the analogy is incomplete in certain respects. Although many courts, as cited above, have held that such are consent decrees we cannot agree. The ordinary consent decree is based on a stipulation as to the judgment itself. In a divorce case, there is no stipulation or consent to the divorce—since such consent or stipulation would prevent the divorce on grounds of collusion. Rather, the only stipulation that there may be is as to property, alimony or support money, or custody of children.

We see, then, that in a case such as the one at bar the divorce decree is partly a judicial determination (as to the divorce itself) and partly in the nature of a consent judgment (as to the property division). We do not hold that, on proper showing, the whole question, including the divorce itself, should be reopened as is the case with the usual consent decree. Instead, we hold that the part of the decree and the stipulation which was occasioned by fraud or mistake should be modified so that the decree will be in accordance

[8]See, McRary v. McRary, 228 N. C. 714, 47 S. E. (2d) 27.

[9]Bergman v. Rhodes, 334 Ill. 137, 165 N. E. 598, 65 A. L. R. 344.

[10]Karnes v. Black, 185 Ky. 410, 215 S. W. 191; cf. Lee v. Rhodes, 227 N. C. 240, 41 S. E. (2d) 747.

[11]Note that the parties must return any moneys paid on the basis of the vacated decree. Seifert v. Gallet, 159 Minn. 131, 198 N. W. 664.

[12]The parties must be given the same rights to prosecution and defense as they had before the consent decree was entered. Davis v. First Nat. Bank, 139 Ga. 702, 78 S. E. 190, 46 L.R.A.(N.S.) 750; 17 Rocky Mt. L. Rev. 114, 118.

with the true and fair intent of the parties at the time the decree was rendered. Isabell v. Isabell, 333 Mich. 519, 53 N. W. (2d) 359; cf. Helvering v. Leonard, 310 U. S. 80, 60 S. Ct. 780, 84 L. ed. 1087 (compared to contract).

■ Whether the wife was mistaken in giving her consent to the stipulation was a question of fact for the trial court. In this case, the stipulation and decree were ambiguous in that they stated "that certain duplex," and described it as the north 50 feet.[13] The facts in the record sustain a finding that the duplex property, according to its usage, included the property up to the fence, and the wife asserted that she thought she was getting all the property up to the fence and that she would not have consented to receiving less. While consent is to be derived from objective manifestations, there was a latent ambiguity in the stipulation and decree which raised the question of fact whether the wife actually consented to receiving only the north 50 feet. As stated above, there was evidence in the record sufficient to sustain the finding that she did not so consent. Since the court could find there was mistake and no actual consent to the express terms, the decree, insofar as it divided the property, was properly modified.

■ As an alternate, the trial court found that there was fraud by the husband sufficient to permit modification of the decree as to the property division.[14] The alleged fraud is in the failure of the

---

[13]In this respect, the situation is somewhat like that in which there has been clerical error as to a description of land. See, McClure v. Bruck, 43 Minn. 305, 45 N. W. 438; Cazzell v. Cazzell, 133 Kan. 766, 3 P. (2d) 479. As to clerical mistakes generally, see Wilson v. City of Fergus Falls, 181 Minn. 329, 232 N. W. 322; In re Estate of Simon, 187 Minn. 399, 246 N. W. 31; Schloss v. George E. Lennon, Inc. 123 Minn. 420, 144 N. W. 148; Annotations, 10 A. L. R. 526, 67 A. L. R. 828, 126 A. L. R. 956. But, see, Wides v. Wides, 300 Ky. 344, 188 S. W. (2d) 471. On the separate problem of ambiguous decrees, see Simons v. Munch, 127 Minn. 266, 149 N. W. 304; Parten v. First Nat. B. & T. Co. 204 Minn. 200, 283 N. W. 408, 120 A. L. R. 862; Hoff v. Hoff, 133 Minn. 86, 157 N. W. 999.

[14]We are not here concerned with problems of fraud on the court such as would come under M. S. A. 548.14. For discussions of this section, as well as extrinsic and intrinsic fraud, see McElrath v. McElrath, 120 Minn.

husband to disclose that the north 50 feet did not include the property up to the fence. Failure to disclose may be fraud sufficient to set aside a judgment,[15] but only if there is a relationship between the parties which would require disclosure.[16]

It is a general rule that in transactions between husband and wife, there is a confidential relationship, that at all times good faith must be observed, and that taking advantage of any lack of knowledge of rights is ground for setting aside the transaction.[17] The confidential relationship arises even where the parties have only intended marriage.[18] Several times this court has set aside antenuptial agreements because of a failure to disclose.[19] We have also held that in a divorce case an agreement as to property rights must be equitable and fair. Warner v. Warner, 219 Minn. 59, 17 N. W. (2d) 58.[20]

However, in the instant case, the wife and husband were not on speaking terms at the time of the stipulation. From this the husband contends that he was not under any duty to disclose and that, even if he were, the wife cannot be said to have relied on his silence. We cannot agree with that contention. Divorces are usually accompanied by bitterness between husband and wife. This is not sufficient ground for permitting one of the parties to

---

380, 139 N. W. 708, 44 L.R.A.(N.S.) 505; Cahaley v. Cahaley, 216 Minn. 175, 12 N. W. (2d) 182, 157 A. L. R. 1; Bloomquist v. Thomas, 215 Minn. 35, 9 N. W. (2d) 337; Berg v. Berg, 227 Minn. 173, 34 N. W. (2d) 722; In re Estate of Jordan, 199 Minn. 53, 271 N. W. 104.

[15]Tankar Gas, Inc. v. Lumbermen's Mut. Cas. Co. 215 Minn. 265, 9 N. W. (2d) 754, 146 A. L. R. 1223.

[16]Egan v. Thorpe Bros. 195 Minn. 370, 263 N. W. 109.

[17]Martin v. Tucker, 217 Minn. 104, 106, 14 N. W. (2d) 105, 106; Knox v. Knox, 222 Minn. 477, 483, 25 N. W. (2d) 225, 229; 26 Am. Jur., Husband and Wife, § 268; 41 C. J. S., Husband and Wife, §§ 120, 162.

[18]Crowley v. Crowley, 219 Minn. 341, 18 N. W. (2d) 40.

[19]E. g., Stanger v. Stanger, 152 Minn. 489, 189 N. W. 402; Welsh v. Welsh, 150 Minn. 23, 184 N. W. 38; but, see, In re Estate of Malchow, 143 Minn. 53, 172 N. W. 915.

[20]As to contracts between spouses generally, see 32 Minn. L. Rev. 262, 278 to 281; and, see, Peyton v. William C. Peyton Corp. 23 Del. Ch. 321, 7 A. (2d) 737, 123 A. L. R. 1482.

remain silent so as to mislead the other. In Mann v. Mann, 135 Okl. 211, 275 P. 348, a wife was defendant in a divorce suit. The wife was represented by counsel during negotiations leading to a stipulation which turned out to be intrinsically inconsistent (similar to that of the instant case) as to a disposition of the property. The Oklahoma court held (135 Okl. 214, 275 P. 351):

"Because of the confidential relationship existing between the parties, it having been shown that the property settlement was apparently unfair, on its face, the burden was on plaintiff to prove good faith and that no unfair advantage was taken in procuring the same."

In Barker v. Barker, 75 N. D. 253, 27 N. W. (2d) 576, 171 A. L. R. 447, after a divorce, the former husband and wife entered into an oral agreement whereby the husband was to purchase a home for the wife and children, title to be in the name of the husband and wife. The wife gave no money, but she cosigned a note. The wife alleged that the husband, contrary to the agreement, took title in himself alone. The court held that the complaint, which sought to have the property declared to be in constructive trust for the wife, stated a cause of action for fraud. It held that, although the parties were divorced, they both had obligations as to the children and thus were under a duty to exercise the utmost good faith. The court said (75 N. D. 259, 27 N. W. [2d] 580):

"The fact that the marriage ties between the plaintiff and defendant had been severed by the decree of divorce did not place them in the same position as though the marriage relation had never existed."

We hold that by the facts in evidence in the case at bar—among them the long marriage and the child—the court could find that the husband was under a duty to disclose to the wife any facts the ignorance of which might mislead her.

Since there was evidence to sustain the findings of the court as to the mistake of the wife and the fraud of the husband, and since

there was no showing of abuse of discretion by the court,[21] its judgment modifying the original decree is affirmed.

Affirmed.

MAGNEY, JUSTICE (dissenting).

The majority opinion concludes that a judgment entered upon a stipulation of property settlement in a divorce action is a consent decree, or in the nature of a consent decree; that plaintiff did not really consent to the judgment; that defendant perpetrated a fraud upon plaintiff; and that the judgment could therefore be vacated and a new judgment substituted.

M. S. A. 518.19 and 518.20, the sections of the statutes applicable to this case, provide for a division of property in a divorce action. These sections provide for incorporation of such provisions in the judgment *as the court deems just and reasonable,* having regard to the circumstances of the case, including the character, ability, and situation of the parties. The court is therefore affirmatively required to *adjudicate* the property rights and liabilities of the parties. This affirmative duty of the court to adjudicate—to pass upon the merits—is inconsistent with calling any judgment in a divorce action relative to property adjustment a "consent judgment." A consent judgment is based wholly on the consent of the parties, and there is no judicial inquiry into the facts or law applicable to the controversy. 3 Freeman, Judgments (5 ed.) § 1350. Moreover, in the case of a consent judgment, it is the duty of the court to enter judgment in accordance with the agreement of the parties. *Id.* § 1344, and the court's authority is limited by the consent or stipulation. *Id.* § 1348. Cf. Wright v. Krabbenhoft, 104 Minn. 460, 116 N. W. 940. It is well settled that the courts in Minnesota are not bound to accept the stipulation of the parties to a divorce action, and may incorporate or refuse to incorporate the stipulation in the decree, as is proper in the situation as disclosed

---

[21]As to review on appeal from an order vacating a judgment, see Rodgers v. United States & Dominion L. Ins. Co. 127 Minn. 435, 149 N. W. 671; Fitzgerald v. Maher, 129 Minn. 414, 152 N. W. 772; cf. Stanger v. Stanger, 152 Minn. 489, 189 N. W. 402; Leighton v. Bruce, 132 Minn. 176, 156 N. W. 285.

by the evidence. Warren v. Warren, 116 Minn. 458, 133 N. W. 1009.

A consent judgment may be vacated for fraud or mutual mistake, but may not be *modified*. 1 Black, Judgments (2 ed.) § 319. Here, the judgment is being modified. But M. S. A. 518.23 provides that the court may from time to time revise and alter a decree respecting the amount of alimony or other allowance; and the court may do so notwithstanding the fact that alimony or allowance provisions in the decree were based upon the stipulation of the parties. Warren v. Warren, *supra;* Erickson v. Erickson, 181 Minn. 421, 232 N. W. 793; see, Vassar v. Vassar, 204 Minn. 326, 283 N. W. 483.

Courts of other states have held that the terms of divorce judgments incorporating stipulations of the parties for property and alimony settlement are "consent decrees." However, in my opinion, the distinctions pointed out above are so significant that we should not adopt that view. A judgment in which the court adopts a recommendation of the parties—a proposed adjudication to which the parties consent—is not a consent decree warranting application to divorce decrees the distinct rules of law applicable to consent decrees.

Even if the judgment in the instant case is not a consent judgment, it remains to be determined what authority, if any, exists in the trial court to modify and amend upon the facts here presented.

One of the grounds upon which the court based its order amending the decree was mutual mistake in the description of the property in the stipulation for property settlement. There is absolutely nothing in the record to sustain a finding of mutual mistake. Defendant testified that he knew when he signed the stipulation that the north 50 feet of the lots did not extend to the filling station fence. He testified that he intended to move the fence as soon as the divorce action was settled. There is nothing in the record to indicate that defendant was mistaken as to what property was included when he signed the stipulation of property settlement. It may be found from the evidence that plaintiff was under a misapprehension as to what property she was to get under the stipula-

tion, but her unilateral mistake cannot be enlarged into a mutual mistake.

The trial court also found that defendant "fraudulently permitted plaintiff to enter into a stipulation which proposed to award to her the residential property in an erroneous legal description, and that his conduct amounted to a fraud on the plaintiff and an over-reaching to the extent that this Court should amend and reform the judgment and decree to reflect the true intent and understanding of the parties herein." I have already inferred that the stipulation reflected the true intent and understanding of defendant. The majority opinion affirms the above conclusion of the trial court upon the ground that there was such a confidential relationship between the parties which would require a full disclosure of all facts, and that the failure to disclose to plaintiff her mistake was fraud, and a sufficient basis for amending a consent judgment. The testimony would support a finding that defendant was aware that, although plaintiff agreed to take a conveyance for the north 50 feet of the lots, she believed that by the conveyance she would acquire the property up to the fence. He said that he did not feel obligated to disclose anything, since he felt that the "legal description" was enough.

Plaintiff testified that she had not been on speaking terms with defendant for over five years prior to the divorce, and that conversation between the parties was limited to business matters. When negotiations for the stipulation for property settlement were being conducted, plaintiff did not talk to defendant at all. Negotiations were carried on by the attorneys in a corridor, while plaintiff and defendant remained in the courtroom. Plaintiff said that she mistrusted her husband at that time and would not depend on what he might say. She said that she depended on her attorney. Both parties presented to the attorneys the papers covering the description of the property from which the stipulation was drawn. She knew that her husband was conveying to her the north 50 feet of the two lots, but assumed, as she claims, that took in the property up to the fence.

Prior to December 12, 1925, the northerly 50 feet of the two lots in question were owned by defendant and his father in joint tenancy. On that day, through a third party, the northerly 50 feet were conveyed to plaintiff and defendant in joint tenancy. She knew that they were given the northerly 50 feet of those two lots. There was no east and west fence on the property at that time. It was not put in until about 1930. On December 16, 1925, plaintiff and defendant placed a $5,000 mortgage on the northerly 50 feet of the lots above described. On December 16, 1933, the parties again placed a mortgage for $2,500 on the northerly 50 feet of the lots. She knew that they built the duplex on the northerly 50 feet. The duplex was built in the fall of 1925, and was placed about 17 feet from the south line of the 50 feet. The distance from the south line of the 50 feet to the filling station is a little over 15 feet.

Plaintiff and defendant were husband and wife at the time the stipulation was entered into. Because of that relationship it is said that there was such a confidential relationship between the parties as would require a full disclosure of all facts. As a matter of fact, the confidential relationship between these parties had ceased to exist many years prior to the entry of the stipulation. They had not spoken to each other for over five years, and she testified that at the time of the stipulation he said nothing, that she mistrusted him, and that she depended on her lawyers. There was here no confidence and reliance. Marriage alone does not conclusively establish the fact that a confidential relationship in fact exists. Here, the evidence is conclusive that no confidential relationship in fact existed. Neither party had particular dominance over or confidence in the other. See, In re Estate of Malchow, 143 Minn. 53, 172 N. W. 915. They were here dealing at arm's length, with capable attorneys to assist them in fighting for advantage.

There are well-recognized rules applicable to fraud perpetrated by silence, but I do not think that they are applicable here.

Plaintiff had been a joint owner of this property since 1925 and had lived on the premises since 1926. The description in the stipu-

lation is the same description found in the deed conveying an interest in the property to her. The physical facts should have been as well known to her as to her joint owner. It does not seem reasonable to me to hold that one joint owner can be held guilty of fraud as to another joint owner relative to the boundary and area of the property which they jointly own—particularly when the claimed fraud consisted merely of silence.

I am unable to go along and hold that under the facts here defendant perpetrated a fraud upon plaintiff by his mere silence; therefore, I respectfully dissent.

MATSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Magney.

KNUTSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Magney. Under our practice, as I understand it, the court may accept and reject so much of a stipulation for a property settlement as it sees fit and may reject it *in toto* if it deems that proper. Under these circumstances, I cannot see that it is more than a mutual recommendation intended to assist the trial court in reaching a just determination of the matter.